# Exhibit B – McDowell Contract



# NFL PLAYER CONTRACT

THIS CONTRACT is between _____ **MALIK MCDOWELL** _____ , hereinafter
"Player," and _____ **FOOTBALL NORTHWEST LLC** _____ ,
a _____ Washington _____ limited liability company _____ hereinafter "Club," operating under
the name of the _____ SEATTLE SEAHAWKS _____ as a member of the National Football League,
hereinafter "League." In consideration of the promises made by each to the other, Player and Club agree as follows:

**1. TERM.** This contract covers ___4___ football season(s), and will begin on the date of execution or March 1, ___2017___ ,
whichever is later, and end on February 28 or 29, ___2021___ , unless extended, terminated, or renewed as specified elsewhere in this contract.

**2. EMPLOYMENT AND SERVICES.** Club employs Player as a skilled football player. Player accepts such employment. He agrees to give his best efforts and loyalty to the Club, and to conduct himself on and off the field with appropriate recognition of the fact that the success of professional football depends largely on public respect for and approval of those associated with the game. Player will report promptly for and participate fully in Club's official mandatory minicamp(s), official preseason training camp, all Club meetings and practice sessions, and all preseason, regular season and postseason football games scheduled for or by Club. If invited, Player will practice for and play in any all-star football game sponsored by the League. Player will not participate in any football game not sponsored by the League unless the game is first approved by the League.

**3. OTHER ACTIVITIES.** Without prior written consent of the Club, Player will not play football or engage in activities related to football otherwise than for Club or engage in any activity other than football which may involve a significant risk of personal injury. Player represents that he has special, exceptional and unique knowledge, skill, ability, and experience as a football player, the loss of which cannot be estimated with any certainty and cannot be fairly or adequately compensated by damages. Player therefore agrees that Club will have the right, in addition to any other right which Club may possess, to enjoin Player by appropriate proceedings from playing football or engaging in football-related activities other than for Club or from engaging in any activity other than football which may involve a significant risk of personal injury.

**4. PUBLICITY AND NFLPA GROUP LICENSING PROGRAM.**
(a) Player hereby grants to Club and the League, separately and together, the right and authority to use, and to authorize others to use solely as described below, his name, nickname, initials, likeness, image, picture, photograph, animation, persona, autograph/signature (including facsimiles thereof), voice, biographical information and/or any and all other identifying characteristics (collectively, "Publicity Rights"), for any and all uses or purposes that publicize and promote NFL Football, the League or any of its member clubs in any way in any and all media or formats, whether analog, digital or other, now known or hereafter developed, including, but not limited to, print, tape, disc, computer file, radio, television, motion pictures, other audio-visual and audio works, Internet, broadband platforms, mobile platforms, applications, and other distribution platforms. Without limiting the foregoing, this grant includes the right to use Player's Publicity Rights for the purpose of publicizing and promoting the following aspects of NFL Football, the League and/or any of its member clubs: brands, games, ticket sales, game broadcasts and telecasts, programming focused on the NFL, one or more NFL clubs and/or their games and events (e.g., coaches shows, highlight based shows such as *Inside the NFL*, behind-the-scenes programming such as *Hard Knocks*), other NFL-related media offerings (e.g., branded content segments featuring NFL game footage and other programming enhancements), media distribution platforms (e.g., NFL.com, NFL Mobile, NFL Network), official events (e.g., NFL Kickoff, NFL Draft), officially sanctioned awards programs (e.g., Rookie of the Year), and public service or community oriented initiatives (e.g., Play60). For purposes of clarity, the foregoing grant of rights includes the right and authority to use, and to authorize affiliates or business partners to use, after the term of this Agreement any Publicity Rights fixed in a tangible medium (e.g., filmed, photographed, recorded or otherwise captured) during the term of this Agreement solely for the purposes described herein. Notwithstanding anything to the contrary, the foregoing grant does not confer, during or after the term of this Agreement, any right or authority to use Player's Publicity Rights in a manner that constitutes any endorsement by Player of a third-party brand, product or service ("Endorsement"). For purposes of clarity, and without limitation, it shall not be an Endorsement for Club or the League to use, or authorize others to use, including, without limitation, in third party advertising and promotional materials, footage and photographs of Player's participation in NFL games or other NFL events that does not unduly focus on, feature, or highlight, Player in a manner that leads the reasonable consumer to believe that Player is a spokesperson for, or promoter of, a third-party commercial product or service.

Player will cooperate with the news media, and will participate upon request in reasonable activities to promote the Club and the League.

Player and National Football League Players Association, including any of its affiliates ("NFLPA") do not and will not contest during or after the term of this agreement, and this hereby confirms their acknowledgment of, the exclusive rights of the League, Club and any NFL member club (i) to telecast, broadcast, or otherwise distribute, transmit or perform, on a live, delayed, or archived basis, in any and all media now known or hereafter developed, any NFL games or any excerpts thereof and (ii) to produce, license, offer for sale, sell, market, or otherwise distribute or perform (or authorize a third party to do any of the foregoing), on a live, delayed, or archived basis, any NFL games or any excerpts thereof, in any and all media now known or hereafter developed, including, but not limited to, packaged or other electronic or digital media.

Nothing herein shall be construed to grant any Publicity Rights for use in licensed consumer products, whether traditional or digital (e.g., video games, trading cards, apparel), other than such products that constitute programming (as described herein) or news and information offerings of medium (e.g., DVDs, digital highlight offerings).

(b) Player hereby assigns the NFLPA and its licensing affiliates, if any, the exclusive and unlimited right to use, license and sublicense the right to use his name, nickname, initials, autograph/signature (including facsimiles), voice, picture, photograph, animation, image, likeness, persona, jersey number, statistics, data, copyrights, biographical information and/or other personal indicia (individually and collectively, "Rights") for use in connection with any product, brand, service, appearance, product line or other commercial use and any sponsorship, endorsement or promotion thereof, when more than five (5) NFL player Rights are involved, regardless of team affiliation and whether that number is reached using player Rights simultaneously or individually, in any form, media, or medium (now known or hereafter developed) during a consecutive 12-month period (a "group licensing program"). For sponsorships, endorsements, and promotions, group licensing programs are further defined as those: (a) in any one product category, as defined by industry standards; or (b) in different categories if the products all use similar or derivative design or artwork, or one player product is used to promote another player product.

The Rights may also be used for the promotion of the NFLPA, its affiliated entities and/or its designees (the "NFLPA Entities"), provided such promotion does not constitute an endorsement by Player of a commercial product not a part of a group licensing program. Player agrees to participate, upon request of the NFLPA and without additional compensation, in reasonable activities to promote the NFLPA Entities, which shall include (i) up to three (3) personal appearances per year or (ii) up to fifteen (15) minutes per week dedicated to promoting the NFLPA Entities. Player retains the right to grant permission to others to utilize his Rights if that individual or entity is not concurrently utilizing the Rights of five (5) or more other NFL players for any commercial purpose whatsoever. If Player's inclusion in an NFLPA program is precluded by an individual exclusive endorsement agreement, and Player provides the NFLPA with immediate written notice of that preclusion, the NFLPA agrees to exclude Player from that particular program. Should Player fail to perform any of his obligations hereunder, the NFLPA may withhold payments owed to Player, if any, in connection with this Group Licensing Assignment.

In consideration for this assignment of rights, the NFLPA agrees to use the revenues it receives from group licensing programs to support the objectives as set forth in the Bylaws of the NFLPA and as otherwise determined by the NFLPA Board. The NFLPA further agrees to use reasonable efforts to promote the use of NFL player Rights in group licensing programs, to provide group licensing opportunities to all NFL players, and to monitor and police unauthorized third-party use of the Rights. The NFLPA makes no representations regarding group licensing other than those expressed herein. This agreement shall be construed under Virginia law.

The assignment in this paragraph shall expire on December 31 of the latter of (i) the third year following the execution of this contract, or (ii) the year after this contract expires, and may not be revoked, terminated or otherwise assigned in any manner by Player until such date. Neither Club nor the League is a party to the terms of this paragraph, which is included herein solely for the administrative convenience and benefit of Player and the NFLPA. Nothing in Paragraph 4b shall be construed or deemed to modify in any way the rights set forth in Paragraph 4a, and the fact that Paragraph 4b (or any of the terms thereof) appears in the Player Contract shall not be referred to, relied upon, or otherwise cited by Player and/or the NFLPA or any of its affiliates in any dispute or legal proceeding as evidence that the NFL, any NFL entity, any Club or Club Affiliate, or any licensee of any of the foregoing has consented, agreed, acknowledged, or does not contest the applicability or interpretation of Paragraph 4b.

5. **COMPENSATION.** For performance of Player's services and all other promises of Player, Club will pay Player a yearly salary as follows:

$ 465,000 /* for the 20 17 season;
$ 781,155 /* for the 20 18 season;
$ 1,097,310 /* for the 20 19 season;
$ 1,413,465 /* for the 20 20 season;
$ /* for the 20 season;
$ /* for the 20 season;
$ /* for the 20 season;
$ /* for the 20 season;
$ /* for the 20 season;
$ /* for the 20 season;
$ /* for the 20 season.

(* - designates the compensation Club will pay player if the player is not on Club's Active/Inactive List)

2

In addition, Club will pay Player such earned performance bonuses as may be called for in this contract; Player's necessary traveling expenses from his residence to training camp; Player's reasonable board and lodging expenses during preseason training and in connection with playing preseason, regular season, and postseason football games outside Club's home city; Player's necessary traveling expenses to and from preseason, regular season, and postseason football games outside Club's home city; Player's necessary traveling expenses to his residence if this contract is terminated by Club; and such additional compensation, benefits and reimbursement of expenses as may be called for in any collective bargaining agreement in existence during the term of this contract. (For purposes of this contract, a collective bargaining agreement will be deemed to be "in existence" during its stated term or during any period for which the parties to that agreement agree to extend it.)

**6. PAYMENT.** Unless this contract or any collective bargaining agreement in existence during the term of this contract specifically provides otherwise, Player will be paid 100% of his yearly salary under this contract in equal weekly or biweekly installments over the course of the applicable regular season period, commencing with the first regular season game played by Club in each season. Unless this contract specifically provides otherwise, if this contract is executed or Player is activated after the beginning of the regular season, the yearly salary payable to Player will be reduced proportionately and Player will be paid the weekly or biweekly portions of his yearly salary becoming due and payable after he is activated. Unless this contract specifically provides otherwise, if this contract is terminated after the beginning of the regular season, the yearly salary payable to Player will be reduced proportionately and Player will be paid the weekly or bi weekly portions of his yearly salary having become due and payable up to the time of termination.

**7. DEDUCTIONS.** Any advance made to Player will be repaid to Club, and any properly levied Club fine or Commissioner fine against Player will be paid, in cash on demand or by means of deductions from payments coming due to the Player under this contract, the amount of such deductions to be determined by Club unless this contract or any collective bargaining agreement in existence during the term of this contract specifically provides otherwise.

**8. PHYSICAL CONDITION.** Player represents to Club that he is and will maintain himself in excellent physical condition. Player will undergo a complete physical examination by the Club physician upon Club request, during which physical examination Player agrees to make full and complete disclosure of any physical or mental condition known to him which might impair his performance under this contract and to respond fully and in good faith when questioned by the Club physician about such condition. If Player fails to establish or maintain his excellent physical condition to the satisfaction of the Club physician, or make the required full and complete disclosure and good faith responses to the Club physician, then Club may terminate this contract.

**9. INJURY.** Unless this contract specifically provides otherwise, if Player is injured in the performance of his services under this contract and promptly reports such injury to the Club physician or trainer, then Player will receive such medical and hospital care during the term of this contract as the Club physician may deem necessary, and will continue to receive his yearly salary for so long, during the season of injury only and for no subsequent period covered by this contract, as Player is physically unable to perform the services required of him by this contract because of such injury. If Player's injury in the performance of his services under this contract results in his death, the unpaid balance of his yearly salary for the season of injury will be paid to his stated beneficiary, or in the absence of a stated beneficiary, to his estate.

**10. WORKERS' COMPENSATION.** Any compensation paid to Player under this contract or under any collective bargaining agreement in existence during the term of this contract for a period during which he is entitled to workers' compensation benefits by reason of temporary total, permanent total, temporary partial, or permanent partial disability will be deemed an advance payment of workers' compensation benefits due Player, and Club will be entitled to be reimbursed the amount of such payment out of any award of workers' compensation.

**11. SKILL, PERFORMANCE AND CONDUCT.** Player understands that he is competing with other players for a position on Club's roster within the applicable player limits. If at any time, in the sole judgment of Club, Player's skill or performance has been unsatisfactory as compared with that of other players competing for positions on Club's roster, or if Player has engaged in personal conduct reasonably judged by Club to adversely affect or reflect on Club, then Club may terminate this contract. In addition, during the period any salary cap is legally in effect, this contract may be terminated if, in Club's opinion, Player is anticipated to make less of a contribution to Club's ability to compete on the playing field than another player or players whom Club intends to sign or attempts to sign, or another player or players who is or are already on Club's roster, and for whom Club needs room.

3

**12. TERMINATION.** The rights of termination set forth in this contract will be in addition to any other rights of termination allowed either party by law. Termination will be effective upon the giving of written notice, except that Player's death, other than as a result of injury incurred in the performance of his services under this contract, will automatically terminate this contract. If this contract is terminated by Club and either Player or Club so requests, Player will promptly undergo a complete physical examination by the Club physician.

**13. INJURY GRIEVANCE.** Unless a collective bargaining agreement in existence at the time of termination of this contract by Club provides otherwise, the following Injury Grievance procedure will apply: If Player believes that at the time of termination of this contract by Club he was physically unable to perform the services required of him by this contract because of an injury incurred in the performance of his services under this contract, Player may, within 60 days after examination by the Club physician, submit at his own expense to examination by a physician of his choice. If the opinion of Player's physician with respect to his physical ability to perform the services required of him by this contract is contrary to that of the Club's physician, the dispute will be submitted within a reasonable time to final and binding arbitration by an arbitrator selected by Club and Player or, if they are unable to agree, one selected in accordance with the procedures of the American Arbitration Association on application by either party.

**14. RULES.** Player will comply with and be bound by all reasonable Club rules and regulations in effect during the term of this contract which are not inconsistent with the provisions of this contract or of any collective bargaining agreement in existence during the term of this contract. Player's attention is also called to the fact that the League functions with certain rules and procedures expressive of its operation as a joint venture among its member clubs and that these rules and practices may affect Player's relationship to the League and its member clubs independently of the provisions of this contract.

**15. INTEGRITY OF GAME.** Player recognizes the detriment to the League and professional football that would result from impairment of public confidence in the honest and orderly conduct of NFL games or the integrity and good character of NFL players. Player therefore acknowledges his awareness that if he accepts a bribe or agrees to throw or fix an NFL game; fails to promptly report a bribe offer or an attempt to throw or fix an NFL game; bets on an NFL game; knowingly associates with gamblers or gambling activity; uses or provides other players with stimulants or other drugs for the purpose of attempting to enhance on-field performance; or is guilty of any other form of conduct reasonably judged by the League Commissioner to be detrimental to the League or professional football, the Commissioner will have the right, but only after giving Player the opportunity for a hearing at which he may be represented by counsel of his choice, to fine Player in a reasonable amount; to suspend Player for a period certain or indefinitely; and/or to terminate this contract.

**16. EXTENSION.** Unless this contract specifically provides otherwise, if Player becomes a member of the Armed Forces of the United States or any other country, or retires from professional football as an active player, or otherwise fails or refuses to perform his services under this contract, then this contract will be tolled between the date of Player's induction into the Armed Forces, or his retirement, or his failure or refusal to perform, and the later date of his return to professional football. During the period this contract is tolled, Player will not be entitled to any compensation or benefits. On Player's return to professional football, the term of this contract will be extended for a period of time equal to the number of seasons (to the nearest multiple of one) remaining at the time the contract was tolled. The right of renewal, if any, contained in this contract will remain in effect until the end of any such extended term.

**17. ASSIGNMENT.** Unless this contract specifically provides otherwise, Club may assign this contract and Player's services under this contract to any successor to Club's franchise or to any other Club in the League. Player will report to the assignee Club promptly upon being informed of the assignment of his contract and will faithfully perform his services under this contract. The assignee club will pay Player's necessary traveling expenses in reporting to it and will faithfully perform this contract with Player.

**18. FILING.** This contract will be valid and binding upon Player and Club immediately upon execution. A copy of this contract, including any attachment to it, will be filed by Club with the League Commissioner within 10 days after execution. The Commissioner will have the right to disapprove this contract on reasonable grounds, including but not limited to an attempt by the parties to abridge or impair the rights of any other club, uncertainty or incompleteness in expression of the parties' respective rights and obligations, or conflict between the terms of this contract and any collective bargaining agreement then in existence. Approval will be automatic unless, within 10 days after receipt of this contract in his office, the Commissioner notifies the parties either of disapproval or of extension of this 10-day period for purposes of investigation or clarification pending his decision. On the receipt of notice of disapproval and termination, both parties will be relieved of their respective rights and obligations under this contract.

**19. DISPUTES.** During the term of any collective bargaining agreement, any dispute between Player and Club involving the interpretation or application of any provision of the NFL collective bargaining agreement or this contract will be submitted to final and binding arbitration in accordance with the procedure called for in any collective bargaining agreement in existence at the time the event giving rise to any such dispute occurs.

**20. NOTICE.** Any notice, request, approval or consent under this contract will be sufficiently given if in writing and delivered in person or mailed (certified or first class) by one party to the other at the address set forth in this contract or to such other address as the recipient may subsequently have furnished in writing to the sender.

**21. OTHER AGREEMENTS.** This contract, including any attachment to it, sets forth the entire agreement between Player and Club and cannot be modified or supplemented orally. Player and Club represent that no other agreement, oral or written, except as attached to or specifically incorporated in this contract, exists between them. The provisions of this contract will govern the relationship between Player and Club unless there are conflicting provisions in any collective bargaining agreement in existence during the term of this contract, in which case the provisions of the collective bargaining agreement will take precedence over conflicting provisions of this contract relating to the rights or obligations of either party.

22. **LAW.** This contract is made under and shall be governed by the laws of the State of  WASHINGTON  .

**23. WAIVER AND RELEASE.** Player waives and releases: (i) any claims relating to the 2011 lockout; (ii) any antitrust claims relating to the Draft, restrictions on free agency, franchise player designations, transition player designations, the Entering Player Pool, the Rookie Compensation Pool, or any other term or condition of employment relating to conduct engaged in prior to the date of this Agreement; and (iii) any claims relating to conduct engaged in pursuant to the express terms of any collective bargaining agreement during the term of any such agreement. This waiver and release also extends to any conduct engaged in pursuant to the express terms of the Stipulation and Settlement Agreement in *White*. This waiver and release does not waive any rights player may have to commence a grievance under the 2006 CBA or to commence a grievance or other arbitration under the 2011 CBA.

**24. OTHER PROVISIONS.**

(a) Each of the undersigned hereby confirms that (i) this contract, renegotiation, extension or amendment sets forth all components of the player's remuneration for playing professional football (whether such compensation is being furnished directly by the Club or by a related or affiliated entity); and (ii) there are not undisclosed agreements of any kind, whether express or implied, oral or written, and there are no promises, undertakings, representations, commitments, inducements, assurances of intent, or understandings of any kind that have not been disclosed to the NFL involving consideration of any kind to be paid, furnished or made available to Player or any entity or person owned or controlled by, affiliated with, or related to Player, either during the term of this contract or thereafter.

(b) Each of the undersigned further confirms that, except as separately set forth in any attachment submitted herewith consistent with the Collective Bargaining Agreement, the .pdf NFL Player Contract Form as set forth herein has not been modified from the form officially authorized for use by the NFL and the NFLPA.

(c) Each of the undersigned further confirms that, except insofar as any of the undersigned may describe in an addendum to this contract, to the best of their knowledge, no conduct in violation of the Anti-Collusion rules took place with respect to this contract. Each of the undersigned further confirms that nothing in this contract is designed or intended to defeat or circumvent any provisions of the collective bargaining agreement dated August 4, 2011, including but not limited to the Rookie Compensation Pool and Salary Cap provisions; however, any conduct permitted by that Agreement shall not be considered a violation of this confirmation.

(d) PERFORMANCE-BASED PAY. Player's attention is called to the fact that he may be entitled to Performance-Based Pay in accordance with the procedures outlined in Article 28, and that his eligibility for such pay is based on a formula that takes into account his playtime percentage and compensation.

5

**25. SPECIAL PROVISIONS.**

See attached addenda.

THIS CONTRACT is executed in six (6) copies. Player acknowledges that before signing this contract he was given the opportunity to seek advice from or be represented by persons of his own selection.

_[signature]_
PLAYER SIGNATURE

MALIK MCDOWELL
PLAYER PRINT

22158 Averhill St
PLAYER HOME ADDRESS        48336

Farmington Hills MI

313-702-1862
TELEPHONE NUMBER

05/25/17
DATE

_[signature]_ Matthew H. Thomas
CLUB EXECUTIVE SIGNATURE

Matthew H. Thomas
CLUB EXECUTIVE PRINT

SEATTLE SEAHAWKS
CLUB NAME

12 SEAHAWKS WAY
CLUB ADDRESS

RENTON, WA 98056

5/25/17
DATE

PLAYER'S AGENT SIGNATURE

Drew Rosenhaus
PLAYER'S AGENT PRINT

3921 Alton Road, Suite 440
ADDRESS

Miami Beach, FL  33140

305-936-1093
TELEPHONE NUMBER

DATE

**Copy Distribution:**  Management Council (Original Signature)
Player, Member Club (Photocopy)
League Office, NFLPA, Player Agent (Electronic Mail)

**25. SPECIAL PROVISIONS.**

See attached addenda.

THIS CONTRACT is executed in six (6) copies. Player acknowledges that before signing this contract he was given the opportunity to seek advice from or be represented by persons of his own selection.

| | |
|---|---|
| PLAYER SIGNATURE | CLUB EXECUTIVE SIGNATURE |
| MALIK MCDOWELL | Matthew H. Thomas |
| PLAYER PRINT | CLUB EXECUTIVE PRINT |
| | SEATTLE SEAHAWKS |
| PLAYER HOME ADDRESS | CLUB NAME |
| | 12 SEAHAWKS WAY |
| | CLUB ADDRESS |
| | RENTON, WA 98056 |
| TELEPHONE NUMBER | |
| DATE | DATE |

PLAYER'S AGENT SIGNATURE

Drew Rosenhaus
PLAYER'S AGENT PRINT

3921 Alton Road, Suite 440
ADDRESS

Miami Beach, FL  33140

305-936-1093
TELEPHONE NUMBER

5/25/2017
DATE

**Copy Distribution:**  Management Council (Original Signature)
Player, Member Club (Photocopy)
League Office, NFLPA, Player Agent (Electronic Mail)

6

## ADDENDUM TO THE NFL PLAYER CONTRACT BETWEEN
## SEATTLE SEAHAWKS ("CLUB") AND MALIK MCDOWELL ("PLAYER")
## FOR THE CONTRACT YEAR 2017, 2018, 2019 and 2020

This Addendum is executed in conjunction with, attached to and made a part of the NFL Player Contract between Club and Player for the **2017, 2018, 2019 and 2020** NFL League Year(s) (the "Contract"). As used in this Addendum, the term "Regular Season" is defined to mean each NFL Regular Season occurring during the period covered by the Contract, with each such Regular Season being identified by the year in which it commences.

**1.    2017 CONDITIONAL PARAGRAPH 5 SALARY GUARANTEE.**

1.1    <u>Skill, Injury & Salary Cap Guarantee</u>. Despite any contrary language in the NFL Player Contract and despite any one (1) of the following occurrences:

A.    In Club's sole judgment, Player's skill or performance has been unsatisfactory as compared with that of other players competing for positions on Club's roster, and Player's Contract is terminated via the NFL waiver system; **OR**

B.    Due to injury suffered while participating or playing for the Club while performing the services under Player's NFL Contract, in the sole discretion of Club's physician, Player is unable to pass Club's **2017** pre-season physical examination and Player's Contract is terminated via the NFL waiver system; **OR**

C.    During the period an NFL salary cap is legally in effect, for salary cap purposes, Player's Contract is terminated via the NFL waiver system;

Club agrees that for the contract year **2017** only, it shall guarantee payment to Player **$465,000** of his scheduled **$465,000** salary provided in Paragraph 5 hereof. It is agreed and understood that the maximum guarantee of Paragraph 5 salary that may be attained by way of this clause is **$465,000**.

1.2    <u>One Year Limitation</u>. This guarantee by Club shall not apply in any year after **2017**, regardless of whether Player is, as of this date, under contract or option to Club for a subsequent year; and regardless of whether Player passes Club's physical examination for a year subsequent to **2017**.

1.3    <u>NFL Waiver System</u>. This guarantee in no way supersedes or obviates the applicability of the League's waiver system to Player.

1.4    <u>Offset</u>. In the event this NFL Player Contract is terminated prior to or during the **2017** NFL regular season and Player subsequently has the opportunity to play for any professional football organization, Club's obligation hereunder shall be reduced by the amount of any and all compensation, including but not limited to salary and signing, reporting and/or incentive bonuses, earned by Player from such football organization(s) during the term of this guarantee and Player shall reimburse Club for any such amounts. Such offset shall be the maximum amount permitted by the terms of the Contract, this Addendum and the NFL Collective Bargaining Agreement dated August 4, 2011.

1.5    <u>Player Default</u>. In the event, at any time prior to or during the **2017** League Year, for any reason whatsoever, Player fails or refuses to report to Club without its prior written consent, or

m m                                    Page 1 of 10



Player fails or refuses to practice or play with Club (except by reason of an NFL football-related injury as determined in the sole discretion of the Club physician which shall be final and binding, or by reason of death resulting from said NFL football-related injury as determined in the sole discretion of the Club physician which shall be final and binding), or Player fails or refuses to perform the services of the Contract or is unavailable to the Club due to incarceration, or Player fails or refuses to perform the services of his Contract or is unavailable to the Club due to a non-football injury sustained as a result of hazardous activity, or Player fails or refuses to perform the services of the Contract or is unavailable to the Club due to retirement, or Player leaves Club without its prior written consent, or Player is suspended by the NFL or Club for Conduct Detrimental (but excluding a suspension for no more than one game for a violation of the NFL Playing Rules), or Player is suspended for violation of the NFL Personal Conduct Policy, or Player is fined or suspended for violation of the NFL Policy and Program for Substances of Abuse, or Player is fined or suspended for violation of the NFL Policy on Anabolic Steroids and Related Substances, or the Contract is terminated for engaging in personal conduct reasonably judged by Club to adversely affect or reflect on Club, or Player otherwise breaches the Contract, Player will be in default of this Addendum.  Should Player be in default as defined herein, the guarantee of **2017** Paragraph 5 salary described herein shall immediately become null and void and Club shall not guarantee any payment of compensation to Player for the **2017** Contract Year.  In the case of such default, Player shall still be entitled to earn the **2017** salary stated in Paragraph 5 of the Contract on a weekly, non-guaranteed basis for as long as Player is on Club's roster and Player meets all customary criteria for earning such Paragraph 5 salary, subject to any applicable withholdings, deductions or fines.

      1.6    Enforcement.  To the extent any of the terms set forth above are deemed unenforceable under the NFL Collective Bargaining Agreement dated August 4, 2011, any forfeiture by Player under this Addendum shall be the maximum amount permitted by the terms of the Contract, this Addendum and the NFL Collective Bargaining Agreement dated August 4, 2011.  No term or condition of this Addendum, and no breach thereof, shall be waived, altered or modified except by written instrument.

      1.7    Tax Implications.  *If Player becomes entitled to the salary guarantee described herein, such guaranteed salary shall be paid no later than the earlier of:  (i) the date(s) prescribed by Paragraph 6 of the Contract (as if the Contract had not been terminated), or (ii) a date determined by Club that is no later than the last day of the "applicable 2½ month period" (as defined in Treas. Reg. § 1.409A-1(b)(4)(i)(A)) with respect to such guaranteed salary.  Any payment made before the payment date that would apply if not for termination of the Contract shall be discounted to the then-present value determined in accordance with the one-year Treasury Note rate published in The Wall Street Journal of February 1 of the calendar year in which the Contract is terminated (or, if The Wall Street Journal is not published on such February 1, then the last day before such February 1 on which The Wall Street Journal is published).*

## 2.    2018 CONDITIONAL PARAGRAPH 5 SALARY GUARANTEE.

      2.1    Skill, Injury & Salary Cap Guarantee.  Despite any contrary language in the NFL Player Contract and despite any one (1) of the following occurrences:

      A.    In Club's sole judgment, Player's skill or performance has been unsatisfactory as compared with that of other players competing for positions on Club's roster, and Player's Contract is terminated via the NFL waiver system; **OR**



B.      Due to injury suffered while participating or playing for the Club while performing the services under Player's NFL Contract, in the sole discretion of Club's physician, Player is unable to pass Club's **2018** (or previous year) pre-season physical examination and Player's Contract is terminated via the NFL waiver system; **OR**

C.      During the period an NFL salary cap is legally in effect, for salary cap purposes, Player's Contract is terminated via the NFL waiver system;

Club agrees that for the contract year **2018** only, it shall guarantee payment to Player **$781,155** of his scheduled **$781,155** salary provided in Paragraph 5 hereof.  It is agreed and understood that the maximum guarantee of Paragraph 5 salary that may be attained by way of this clause is **$781,155**.

2.2     <u>One Year Limitation</u>.  This guarantee by Club shall not apply in any year after **2018**, regardless of whether Player is, as of this date, under contract or option to Club for a subsequent year; and regardless of whether Player passes Club's physical examination for a year subsequent to **2018**.

2.3     <u>NFL Waiver System</u>.  This guarantee in no way supersedes or obviates the applicability of the League's waiver system to Player.

2.4     <u>Offset</u>.  In the event this NFL Player Contract is terminated prior to or during the **2018** NFL regular season and Player subsequently has the opportunity to play for any professional football organization, Club's obligation hereunder shall be reduced by the amount of any and all compensation, including but not limited to salary and signing, reporting and/or incentive bonuses, earned by Player from such football organization(s) during the term of this guarantee and Player shall reimburse Club for any such amounts.  Such offset shall be the maximum amount permitted by the terms of the Contract, this Addendum and the NFL Collective Bargaining Agreement dated August 4, 2011.

2.5     <u>Player Default</u>.  In the event during the **2018** League Year, for any reason whatsoever, Player fails or refuses to report to Club without its prior written consent, or Player fails or refuses to practice or play with Club (except by reason of an NFL football-related injury as determined in the sole discretion of the Club physician which shall be final and binding, or by reason of death resulting from said NFL football-related injury as determined in the sole discretion of the Club physician which shall be final and binding), or Player fails or refuses to perform the services of the Contract or is unavailable to the Club due to incarceration, or Player fails or refuses to perform the services of his Contract or is unavailable to the Club due to a non-football injury sustained as a result of hazardous activity, or Player fails or refuses to perform the services of the Contract or is unavailable to the Club due to retirement, or Player leaves Club without its prior written consent, or Player is suspended by the NFL or Club for Conduct Detrimental (but excluding a suspension for no more than one game for a violation of the NFL Playing Rules), or Player is suspended for violation of the NFL Personal Conduct Policy, or Player is fined or suspended for violation of the NFL Policy and Program for Substances of Abuse, or Player is fined or suspended for violation of the NFL Policy on Anabolic Steroids and Related Substances, or the Contract is terminated for engaging in personal conduct reasonably judged by Club to adversely affect or reflect on Club, or Player otherwise breaches the Contract, Player will be in default of this Addendum.  Should Player be in default as defined herein, the guarantee of **2018** Paragraph 5 salary described herein shall immediately become null and void and Club shall not guarantee any payment of compensation to Player for the **2018** Contract Year.  In the case of such default, Player shall still be entitled to earn the **2018** salary stated in Paragraph 5 of the Contract on a weekly, non-guaranteed basis for as long as Player is on Club's roster and Player meets all customary



criteria for earning such Paragraph 5 salary, subject to any applicable withholdings, deductions or fines.

2.6     Enforcement.  To the extent any of the terms set forth above are deemed unenforceable under the NFL Collective Bargaining Agreement dated August 4, 2011, any forfeiture by Player under this Addendum shall be the maximum amount permitted by the terms of the Contract, this Addendum and the NFL Collective Bargaining Agreement dated August 4, 2011.  No term or condition of this Addendum, and no breach thereof, shall be waived, altered or modified except by written instrument.

2.7     Tax Implications.  *If Player becomes entitled to the salary guarantee described herein, such guaranteed salary shall be paid no later than the earlier of:  (i) the date(s) prescribed by Paragraph 6 of the Contract (as if the Contract had not been terminated), or (ii) a date determined by Club that is no later than the last day of the "applicable 2½ month period" (as defined in Treas. Reg. § 1.409A-1(b)(4)(i)(A)) with respect to such guaranteed salary.  Any payment made before the payment date that would apply if not for termination of the Contract shall be discounted to the then-present value determined in accordance with the one-year Treasury Note rate published in The Wall Street Journal of February 1 of the calendar year in which the Contract is terminated (or, if The Wall Street Journal is not published on such February 1, then the last day before such February 1 on which The Wall Street Journal is published).*

3.     **2019 CONDITIONAL PARAGRAPH 5 SALARY GUARANTEE.**

3.1     Skill, Injury & Salary Cap Guarantee.  Despite any contrary language in the NFL Player Contract and despite any one (1) of the following occurrences:

A.     In Club's sole judgment, Player's skill or performance has been unsatisfactory as compared with that of other players competing for positions on Club's roster, and Player's Contract is terminated via the NFL waiver system; **OR**

B.     Due to injury suffered while participating or playing for the Club while performing the services under Player's NFL Contract, in the sole discretion of Club's physician, Player is unable to pass Club's **2019** (or previous year) pre-season physical examination and Player's Contract is terminated via the NFL waiver system; **OR**

C.     During the period an NFL salary cap is legally in effect, for salary cap purposes, Player's Contract is terminated via the NFL waiver system;

Club agrees that for the contract year **2019** only, it shall guarantee payment to Player **$471,843** of his scheduled **$1,097,310** salary provided in Paragraph 5 hereof.  It is agreed and understood that the maximum guarantee of Paragraph 5 salary that may be attained by way of this clause is **$471,843**.

3.2     One Year Limitation.  This guarantee by Club shall not apply in any year after **2019**, regardless of whether Player is, as of this date, under contract or option to Club for a subsequent year; and regardless of whether Player passes Club's physical examination for a year subsequent to **2019**.

3.3     NFL Waiver System.  This guarantee in no way supersedes or obviates the applicability of the League's waiver system to Player.

ꟽꟽ

Page 4 of 10



3.4     Offset.  In the event this NFL Player Contract is terminated prior to or during the **2019** NFL regular season and Player subsequently has the opportunity to play for any professional football organization, Club's obligation hereunder shall be reduced by the amount of any and all compensation, including but not limited to salary and signing, reporting and/or incentive bonuses, earned by Player from such football organization(s) during the term of this guarantee and Player shall reimburse Club for any such amounts.  Such offset shall be the maximum amount permitted by the terms of the Contract, this Addendum and the NFL Collective Bargaining Agreement dated August 4, 2011.

3.5     Player Default.  In the event during the **2019** League Year, for any reason whatsoever, Player fails or refuses to report to Club without its prior written consent, or Player fails or refuses to practice or play with Club (except by reason of an NFL football-related injury as determined in the sole discretion of the Club physician which shall be final and binding, or by reason of death resulting from said NFL football-related injury as determined in the sole discretion of the Club physician which shall be final and binding), or Player fails or refuses to perform the services of the Contract or is unavailable to the Club due to incarceration, or Player fails or refuses to perform the services of his Contract or is unavailable to the Club due to a non-football injury sustained as a result of hazardous activity, or Player fails or refuses to perform the services of the Contract or is unavailable to the Club due to retirement, or Player leaves Club without its prior written consent, or Player is suspended by the NFL or Club for Conduct Detrimental (but excluding a suspension for no more than one game for a violation of the NFL Playing Rules), or Player is suspended for violation of the NFL Personal Conduct Policy, or Player is fined or suspended for violation of the NFL Policy and Program for Substances of Abuse, or Player is fined or suspended for violation of the NFL Policy on Anabolic Steroids and Related Substances, or the Contract is terminated for engaging in personal conduct reasonably judged by Club to adversely affect or reflect on Club, or Player otherwise breaches the Contract, Player will be in default of this Addendum.  Should Player be in default as defined herein, the guarantee of **2019** Paragraph 5 salary described herein shall immediately become null and void and Club shall not guarantee any payment of compensation to Player for the **2019** Contract Year.  In the case of such default, Player shall still be entitled to earn the **2019** salary stated in Paragraph 5 of the Contract on a weekly, non-guaranteed basis for as long as Player is on Club's roster and Player meets all customary criteria for earning such Paragraph 5 salary, subject to any applicable withholdings, deductions or fines.

3.6     Enforcement.  To the extent any of the terms set forth above are deemed unenforceable under the NFL Collective Bargaining Agreement dated August 4, 2011, any forfeiture by Player under this Addendum shall be the maximum amount permitted by the terms of the Contract, this Addendum and the NFL Collective Bargaining Agreement dated August 4, 2011.  No term or condition of this Addendum, and no breach thereof, shall be waived, altered or modified except by written instrument.

3.7     Tax Implications.  *If Player becomes entitled to the salary guarantee described herein, such guaranteed salary shall be paid no later than the earlier of: (i) the date(s) prescribed by Paragraph 6 of the Contract (as if the Contract had not been terminated), or (ii) a date determined by Club that is no later than the last day of the "applicable 2½ month period" (as defined in Treas. Reg. § 1.409A-1(b)(4)(i)(A)) with respect to such guaranteed salary. Any payment made before the payment date that would apply if not for termination of the Contract shall be discounted to the then-present value determined in accordance with the one-year Treasury Note rate published in The Wall Street Journal of February 1 of the calendar year in which the Contract is terminated (or, if The Wall Street Journal is not published on such February 1, then the last day before such February 1 on which The Wall Street Journal is published).*





**4.     FULL FORCE:**   The Contract, together with this Addendum and all other addenda simultaneously executed herein, contains the entire agreement of the parties with respect to the matters agreed to, intended for, and provided for therein, and shall supersede any written instrument or oral agreement previously made or entered into by the parties to this Contract or their representatives. This Addendum modifies the Contract only to the extent specifically set forth herein.  All other aspects of the Contract, including any addenda thereto, remain unchanged and in full force and effect.  To the extent any of the terms set forth in this Addendum, the Contract and all other addenda are deemed unenforceable under the NFL Collective Bargaining Agreement dated August 4, 2011, such unenforceable terms shall be reduced to the extent necessary so that the terms, as so reduced, are enforceable (including, but not limited to, any provision relating to the repayment by Player to Club of any unearned portion of a bonus or any other compensation, which shall be reduced to the maximum amount permitted under the Contract and the NFL Collective Bargaining Agreement dated August 4, 2011), while all other terms and conditions of the Contract, this Addendum and all other addenda shall remain in full force and effect. The invalidity or unenforceability of any provision of this Contract shall not affect the validity or enforceability of any other provision of this Contract, which shall remain in full force and effect.

**5.     CLAUSE HEADINGS:**   The clause headings appearing in this Addendum as well as the clause headings appearing elsewhere in the Contract and all other addenda have been inserted for the purpose of convenience and ready reference.  The headings do not purport to, and shall not be deemed to, define, limit or extend the scope or intent of the clauses to which they pertain nor any other substantive provision of the Contract.

**6.     WAIVER:**   No term or condition of this Contract, and no breach thereof, shall be waived, altered or modified except by written instrument executed by both parties.  No waiver shall be deemed to be a continuing waiver, but shall be only for the specific event.  The waiver of any default or breach of the Contract will not constitute a waiver of any other or subsequent default or breach.  No failure or delay on the part of Club in exercising any power or right under the Contract shall operate as a waiver thereof, nor shall any single or partial exercise of any such power or right preclude any other or further exercise thereof or the exercise of any other power or right.

**7.     INSURABLE INTEREST:**   Club has an insurable interest in Player, and Player agrees to cooperate reasonably with Club in all matters pertaining to said interest, including submission to physical examinations for insurance purposes.

**8.     CONFIDENTIALITY:**   The financial terms of the Contract and all corresponding addenda as well as any discussion regarding potential renegotiation or extension of the Contract shall be strictly confidential except as otherwise expressly provided.  Accordingly, Player and his representatives agree not to disclose any terms of said Contract or content of any contractually related discussions to the media, teammates or any other external sources.  Club shall only disclose the length of said Contract to external sources.  In addition, Club shall only disclose required components of said Contract to the National Football League, the NFL Players' Association and to the Player's certified representatives strictly on a need to know basis.

**9.     JURISDICTION AND GOVERNING LAW:**   This Contract and all of its terms and conditions was negotiated and agreed upon in the state of Washington and in no other state; its execution below is made in the state of Washington.  The parties hereby agree pursuant to R.C.W. 51.12.120(5) that employment is principally localized in the state of Washington. This Contract and

Page **6** of **10**



any worker's compensation claims arising from performance hereunder shall be governed by the laws of the state of Washington. As such, Player and Club acknowledge and agree that the exclusive jurisdiction for resolving injury related claims shall be the Division of Workers' Compensation of Washington, and that any and all Workers' Compensation claims shall be subject to the worker's compensation laws of the state of Washington and of no other state. This Paragraph shall have no application to any injury sustained by Player after the Contract is assigned by waivers or trade to another club domiciled outside the state of Washington.

10.   **REPRESENTATION AND WARRANTY:**   Player hereby represents that he is not under contract to any other professional football league, or any other professional football club, and is free to negotiate and sign the Contract. Player also represents and warrants, as of the date hereof that, except as otherwise disclosed to Club, (i) Player has not been charged with, indicted for, convicted of or pled *nolo contendere* to any felony and/or misdemeanor involving fraud or moral turpitude; (ii) Player has not engaged in conduct which could subject Player to a charge, indictment or conviction of any such offense; (iii) no circumstances exist that would prevent Player's continuing availability to the Club for the duration of the Contract; and (iv) Player has made full and complete disclosure to Club of any physical or mental condition known to him which might impair his performance under the Contract and has responded fully and in good faith when questioned about his physical or mental condition. Player further recognizes that the Club is relying on such representations in entering into this Contract, and Player agrees that any such false representation shall be a material breach of the Contract, in which event the Club fully reserves all of its rights and remedies under the Contract and the NFL Collective Bargaining Agreement dated August 4, 2011.

11.   **EXCLUSIVE SERVICES:**   During the term of this Contract, neither Player nor Player's representatives will solicit offers from, negotiate with or enter into any agreement with any professional football team other than the Club to perform football-related services. The prohibition applies to all offers, contracts or negotiations regardless of whether or not the prospective services are to be performed by the Player after the expiration of this Contract. Furthermore, Player acknowledges that if, during the term of this Contract, Player or Player's representatives acting on Player's behalf were to negotiate and sign another contract to perform in the present or the future as a player for any other team in any other sport, the Club would be significantly injured, the costs of which cannot be estimated with certainty and for which injury the Club cannot be fairly or adequately compensated by financial damages. Therefore, Player agrees that if, during the term of this Contract, Player or Player's representatives solicit or entertain offers or negotiate or sign a contract to perform in the present or the future as a player for any other party in any sport, including but not limited to the National Football League, such action would materially breach this Contract and the Club will be entitled to a temporary restraining order and to an injunction restraining and enjoining the Player from negotiating, signing or performing such contract. Nothing in this provision shall be construed as prohibiting the Club from pursuing any remedies available to it for such breach, including the recovery of damages from the Player, inclusive of any and all expenses incurred by the Club directly or indirectly as a result of the Club's enforcement of this provision.

12.   **ADDITIONAL PLAYER SERVICES:**   For each contract and option year of this Contract, in addition to the base salary and other compensation stated in the Contract, the Player agrees to fulfill up to five (5) community relations/sponsor appearances or promotional activities on behalf of the Club. Such requests may include, but are not limited to, speaking engagements and personal appearances as a representative of the Club. Player and Club acknowledge that the maximum remuneration Player may receive for each such appearance made on Club's behalf shall be the prevailing commercial rate not to



Page **7** of **10**



exceed Five Thousand Dollars ($5,000.00) per appearance or activity, however Club is under no obligation to remunerate Player for said appearances or activities. Such appearances and activities shall be scheduled by Club in a reasonable manner. To the extent the Player incurs any out-of-pocket expenses, Club shall reimburse Player for such reasonable out-of-pocket expenses within thirty (30) days of submission of a written expense report and applicable receipts. Player grants to Club the rights to the use of digital images of Player in uniform on the Club's internet website and in any Club publication.

13.   **BUSINESS DEVELOPMENT:**   During the term of this Contract, Club and Player agree to work and cooperate with one another in good faith with respect to all Club media and marketing activities and recognize it is in the best interest of the Player and Club for Player, where appropriate and whenever possible, to pursue commercial, promotional and media relationships with the Club's sponsors and media partners. Club and Player agree that Player will exhaust all reasonable efforts to establish relationships exclusively with Club's sponsors and media partners, and only if after attempting to do so, the Player is unable to enter into a commercially reasonable relationship, then Player has the right to establish a relationship with a non-Club affiliated entity. However, Player agrees that, prior to entering into a relationship with any non-Club affiliated entity, Club's sponsors and media partners will have a reasonable opportunity to match any compensation terms, which would unequivocally require the Player to establish the relationship with that Club sponsor or media partner. Player agrees to refrain from engaging in any marketing or media activity, other than through Club or with Club's written consent, that would reasonably infer the Club's sponsorship or endorsement of such activity, including without limitation, use of the Club's name, logo, mark, colors, uniform or any other symbol identifying the Club. Notwithstanding anything to the contrary, Player agrees that he will not, without prior written consent of the Club (which consent will not be unreasonably withheld), appear as a regularly scheduled guest or host of a radio or television production related to professional football for any local media other than a Club-sponsored radio or television network.

14.   **PERFORMANCE BONUSES:**   In order to earn any of the individual or team incentives contained in this Contract, Player must be on the Club's Active, Inactive, Reserve/Injured or Physically Unable to Perform lists for each game of the seasons covered by this Contract, exclusive of any games after this Contract has been terminated by Club for skill reasons. To the extent that any bonus or salary escalator provided in the Contract is satisfied upon a statistical achievement or ranking, the prioritized order in which statistical sources shall control is as follows: (i) the Official National Football League Statistics as compiled and promulgated by the NFL; (ii) the final Club statistics as compiled by the Club's coaching staff; or (iii) the unofficial statistics of the Club as compiled and promulgated by the Club's Media Relations Department. Furthermore, to the extent that any bonus or salary escalator provided herein rely upon percentages or totals, for the purposes of mathematical clarification, the corresponding truncated integer shall apply and the rounding up of decimals shall not apply.

15.   **SALARY FORFEITURE:**   Player shall be subject to forfeiture of Salary to the maximum extent permitted and as defined under Article 4, Section 9 of the NFL Collective Bargaining Agreement, dated August 4, 2011.

16.   **REPAYMENT AND OFFSET:**   With the exception of any amounts subject to repayment under the forfeiture terms and provisions of Article 4, Section 9 of the NFL Collective Bargaining Agreement dated August 4, 2011, any amounts owed by Player to Club shall be subject to this Paragraph. Player hereby expressly authorizes Club, in its sole discretion, to deduct and set off, at any



Page **8** of 10



time and from time to time, all or part of any amounts owed by Player to Club from any current or deferred wages, salaries, bonuses, and/or any other amounts owed to Player by Club.  It is further understood and agreed that Player's waiver of rights to certain unearned and/or unpaid amounts and Player's obligation to repay to the Club certain amounts pursuant to the Contract are express conditions of the Contract and, but for Player's agreement to such conditions, Club would not have executed the Contract. In the event that this Contract is assigned to another NFL club or Player subsequently is otherwise employed by any professional football organization, including Club, as a football player, Player hereby authorizes such club(s) to deduct for the account of Club the full amount of any such amounts owed by Player to Club that were not repaid to, or collected by, Club prior thereto.  Player hereby agrees, upon request of Club, to execute any further documentation required or otherwise deemed necessary to facilitate such repayment. If any outstanding amounts owed by Player to Club cannot be satisfied in full by the deductions described herein, then Club will be entitled to exercise all rights and remedies available to it to compel immediate payment thereof, and Player and Club agree that the non-prevailing party will pay all costs and expenses of such collection including, but not limited to, attorney's fees.

17.   **TAX IMPLICATIONS:**   Player and Player's representatives acknowledge and agree that neither Club nor any of its advisors or affiliates have any responsibility to provide Player, Player's representatives or any of Player's advisors or affiliates with tax advice related to the tax consequences of this NFL Player Contract or otherwise.  Player shall be responsible (and Club does not assume any responsibility) for paying all income, employment, excise and other taxes (including, but not limited to, any tax incurred pursuant to Section 409A of the Internal Revenue Code) on all payments, benefits, and other income (including imputed income) provided under, or resulting from, this Contract and any plan or other arrangement involving Club.

18.   **ACKNOWLEDGEMENT:** By executing this Addendum, Player acknowledges that Player has read the Contract and all associated addenda, Player has consulted with the advisor of Player's choice or had the opportunity to do so, and Player understands the terms and enters into the Contract of his own free will and choice.  This Contract is being executed in Renton, Washington.

_____          05/25/17
MALIK MCDOWELL                             DATE

_____          _____
DREW ROSENHAUS                             DATE

SEATTLE SEAHAWKS
CLUB

_____          5/25/17
MATTHEW H. THOMAS                          DATE

Page **9** of 10

time and from time to time, all or part of any amounts owed by Player to Club from any current or deferred wages, salaries, bonuses, and/or any other amounts owed to Player by Club. It is further understood and agreed that Player's waiver of rights to certain unearned and/or unpaid amounts and Player's obligation to repay to the Club certain amounts pursuant to the Contract are express conditions of the Contract and, but for Player's agreement to such conditions, Club would not have executed the Contract. In the event that this Contract is assigned to another NFL club or Player subsequently is otherwise employed by any professional football organization, including Club, as a football player, Player hereby authorizes such club(s) to deduct for the account of Club the full amount of any such amounts owed by Player to Club that were not repaid to, or collected by, Club prior thereto. Player hereby agrees, upon request of Club, to execute any further documentation required or otherwise deemed necessary to facilitate such repayment. If any outstanding amounts owed by Player to Club cannot be satisfied in full by the deductions described herein, then Club will be entitled to exercise all rights and remedies available to it to compel immediate payment thereof, and Player and Club agree that the non-prevailing party will pay all costs and expenses of such collection including, but not limited to, attorney's fees.

**17.     TAX IMPLICATIONS:**  Player and Player's representatives acknowledge and agree that neither Club nor any of its advisors or affiliates have any responsibility to provide Player, Player's representatives or any of Player's advisors or affiliates with tax advice related to the tax consequences of this NFL Player Contract or otherwise. Player shall be responsible (and Club does not assume any responsibility) for paying all income, employment, excise and other taxes (including, but not limited to, any tax incurred pursuant to Section 409A of the Internal Revenue Code) on all payments, benefits, and other income (including imputed income) provided under, or resulting from, this Contract and any plan or other arrangement involving Club.

**18.     ACKNOWLEDGEMENT:** By executing this Addendum, Player acknowledges that Player has read the Contract and all associated addenda, Player has consulted with the advisor of Player's choice or had the opportunity to do so, and Player understands the terms and enters into the Contract of his own free will and choice. This Contract is being executed in Renton, Washington.

MALIK MCDOWELL

_____          DATE _____

_____          DATE _____5/25/2017_____
DREW ROSENHAUS

SEATTLE SEAHAWKS
CLUB

_____          DATE _____
MATTHEW H. THOMAS

**SIGNING BONUS ADDENDUM**
**TO THE NFL PLAYER CONTRACT BETWEEN**
**SEATTLE SEAHAWKS ("CLUB") AND MALIK MCDOWELL ("PLAYER")**
**FOR THE CONTRACT YEARS 2017, 2018, 2019 and 2020**

Player and Club are executing this Addendum concurrently with their execution of an NFL Player Contract for the **2017, 2018, 2019 and 2020** contract years (the "Contract"). As additional consideration and subject to the Player passing the Club's physical examination and approval of the Contract by the NFL Management Council, Club agrees to pay Player the sum of **$3,198,476** ("Signing Bonus"). Payment of said Signing Bonus shall be contingent upon the receipt of this Addendum and shall be payable as follows:

| PAYMENT DATE | AMOUNT OF PAYMENT |
|---|---|
| On or before June 2, 2017 | $1,598,476 |
| On or before July 14, 2017 | $800,000 |
| On or before September 15, 2017 | $500,000 |
| On or before October 16, 2017 | $300,000 |

Player shall be subject to forfeiture of Signing Bonus or Salary to the maximum extent permitted under Article 4, Section 9 of the NFL Collective Bargaining Agreement dated August 4, 2011. It is further understood and agreed that Player's waiver of rights to certain forfeited Signing Bonus amounts and Player's obligation to re-pay certain forfeited Signing Bonus amounts are express provisions of this Contract and, but for the provisions herein contained, Club would not have executed the Contract. Player hereby expressly authorizes Club, in its sole discretion, to deduct and set off at any time and from time to time all or any part of any sums of forfeited Signing Bonus owed by Player to Club from any current or deferred wages, salaries, contractual bonuses, performance based pay, termination pay, severance pay, injury protection benefit and/or additional consideration owed to Player by Club. Recovery of any forfeited amounts will be made in accordance with any applicable provisions of Article 4, Section 9 of the NFL Collective Bargaining Agreement dated August 4, 2011.

It is expressly understood that no part of the Signing Bonus herein provided is part of any salary in the Contract specified above and that said Signing Bonus will not be deemed part of any salary in the Contract specified above if Club exercises any option for Player's services in a season subsequent to the final contract year, and that such obligations of Club are not terminable if the Contract is terminated for skill via the NFL waiver system, provided that Player has not breached the terms of, the Contract or this Addendum prior to such termination.

To the extent any of the terms set forth above are deemed unenforceable under the NFL Collective Bargaining Agreement dated August 4, 2011, such unenforceable terms shall be reduced to the extent necessary so that the terms, as so reduced, are enforceable, while all other terms and conditions of the Contract shall remain in full force and effect. No term or condition of this Addendum, and no breach thereof, shall be waived, altered or modified except by written instrument.

_____    05/25/17
MALIK MCDOWELL                       DATE

_____    _____
DREW ROSENHAUS                       DATE

SEATTLE SEAHAWKS
CLUB
_____    5/25/17
MATTHEW H. THOMAS                    DATE

Page **10** of 10

**SIGNING BONUS ADDENDUM**
**TO THE NFL PLAYER CONTRACT BETWEEN**
**SEATTLE SEAHAWKS ("CLUB") AND MALIK MCDOWELL ("PLAYER")**
**FOR THE CONTRACT YEARS 2017, 2018, 2019 and 2020**

Player and Club are executing this Addendum concurrently with their execution of an NFL Player Contract for the **2017, 2018, 2019 and 2020** contract years (the "Contract"). As additional consideration and subject to the Player passing the Club's physical examination and approval of the Contract by the NFL Management Council, Club agrees to pay Player the sum of **$3,198,476** ("Signing Bonus"). Payment of said Signing Bonus shall be contingent upon the receipt of this Addendum and shall be payable as follows:

| PAYMENT DATE | AMOUNT OF PAYMENT |
|---|---|
| On or before June 2, 2017 | $1,598,476 |
| On or before July 14, 2017 | $800,000 |
| On or before September 15, 2017 | $500,000 |
| On or before October 16, 2017 | $300,000 |

Player shall be subject to forfeiture of Signing Bonus or Salary to the maximum extent permitted under Article 4, Section 9 of the NFL Collective Bargaining Agreement dated August 4, 2011. It is further understood and agreed that Player's waiver of rights to certain forfeited Signing Bonus amounts and Player's obligation to re-pay certain forfeited Signing Bonus amounts are express provisions of this Contract and, but for the provisions herein contained, Club would not have executed the Contract. Player hereby expressly authorizes Club, in its sole discretion, to deduct and set off at any time and from time to time all or any part of any sums of forfeited Signing Bonus owed by Player to Club from any current or deferred wages, salaries, contractual bonuses, performance based pay, termination pay, severance pay, injury protection benefit and/or additional consideration owed to Player by Club. Recovery of any forfeited amounts will be made in accordance with any applicable provisions of Article 4, Section 9 of the NFL Collective Bargaining Agreement dated August 4, 2011.

It is expressly understood that no part of the Signing Bonus herein provided is part of any salary in the Contract specified above and that said Signing Bonus will not be deemed part of any salary in the Contract specified above if Club exercises any option for Player's services in a season subsequent to the final contract year, and that such obligations of Club are not terminable if the Contract is terminated for skill via the NFL waiver system, provided that Player has not breached the terms of, the Contract or this Addendum prior to such termination.

To the extent any of the terms set forth above are deemed unenforceable under the NFL Collective Bargaining Agreement dated August 4, 2011, such unenforceable terms shall be reduced to the extent necessary so that the terms, as so reduced, are enforceable, while all other terms and conditions of the Contract shall remain in full force and effect. No term or condition of this Addendum, and no breach thereof, shall be waived, altered or modified except by written instrument.

| | |
|---|---|
| MALIK MCDOWELL | DATE |
| DREW ROSENHAUS | DATE          5/25/2017 |
| SEATTLE SEAHAWKS | |
| CLUB | |
| MATTHEW H. THOMAS | DATE |

Page **10** of **10**